# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MATTHEW R. BUROW,<br><br>Plaintiff,<br><br>v.<br><br>ERIK MIETHNER and RICHARD JACOBS,<br><br>Defendants. | Case No. 20-CV-579-JPS<br><br>**ORDER** |

**1. INTRODUCTION**

On April 8, 2020, Plaintiff Matthew R. Burow ("Plaintiff") filed the above-captioned case against Defendants Erik Miethner ("Miethner") and Richard Jacobs ("Jacobs") (collectively, "Defendants"). (Docket #1). On June 16, 2020, Defendants moved to dismiss the case pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (Docket #7). That motion is fully briefed, and, for the reasons stated herein, the Court is obliged to grant the motion and dismiss the case for lack of personal jurisdiction.

**2. STANDARD OF REVIEW**

Under FRCP 12(b)(2), a party may move to dismiss on the ground that the court lacks jurisdiction over him. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction when the defendant contests it. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). However, in cases such as this one, where the matter is decided on a motion to dismiss and without an evidentiary hearing, the plaintiff "'need only make out a *prima facie* case of personal jurisdiction.'" *Id.*

(quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). "Personal jurisdiction must be established separately with respect to each claim and each defendant." *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *1 (E.D. Wis. Dec. 10, 2009).

Unlike some other challenges to a plaintiff's complaint, when questions of personal jurisdiction arise, the court may consider affidavits and other evidence outside the pleadings. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Indeed, the court can "accept as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU–Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Nevertheless, the court will "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Purdue*, 338 F.3d at 782; *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

### 3. RELEVANT FACTS AND PROCEDURAL HISTORY

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in his favor, the relevant facts are as follows. Plaintiff is an adult resident of the State of Wisconsin and a United States citizen. (Docket #1 at 1). Defendants are Canadian citizens and residents of Ontario, Canada. (*Id.*) On or about December 9, 2019, Defendants entered into an "Option to Purchase Agreement" with Esteban Sandoval Ortiz (the "Seller") for the Hotel Flamingo Paradise in Costa Rica (the "Property"). (*Id.* at 2). In December of 2019 and January 2020, Defendants, acting through their consultant, Joyce Salazar ("Salazar") of J.E. Salazar & Associates (located in Washington, D.C.), contacted Plaintiff by phone in Wisconsin to explore the possibility of Plaintiff investing in the acquisition of the Property. (*Id.*) As a result of those discussions, Plaintiff

and Defendants entered into an "Investment Agreement." (*Id.*) The Investment Agreement makes no mention of Wisconsin and is not governed by Wisconsin law. (Docket #1-3).

Pursuant to the Investment Agreement, Plaintiff agreed to acquire a 60% interest in the Property in exchange for depositing $200,000 and contributing an additional $150,000 for due diligence and the legal costs associated with the purchase of the Property. (Docket #1 at 2). As confirmed in the Investment Agreement, Plaintiff transferred $200,000 from his bank in Wisconsin to BMO Harris Bank N.A. in Chicago to fund and satisfy Defendants' obligations to pay the Texas-based escrow agents as required under an "Option to Purchase Agreement." (*Id.* at 2–3; Docket #10 at 3). Plaintiff also transferred $20,000 to Invicta Legal Group to cover Defendants' legal costs, as well as the remaining $130,000 directly to Miethner via wire transfer on January 23, 2020. (Docket #1 at 3).

Defendants and the Seller executed a "First Addendum" to the Option to Purchase Agreement, which extended the term of the option and closing date to March 31, 2020. (*Id.*) In February and March 2020, Defendants conducted due diligence to evaluate whether to execute the option. (*Id.*) Defendants provided the financial information they received from the Seller to Plaintiff, along with the due diligence report that Defendants obtained from their law firm, Invicta Legal Group. (*Id.*) Then, on March 12, 2020, Miethner contacted Plaintiff to inform him that Defendants needed Plaintiff to provide his bank statements for the last three months, a reference letter from his bank, and his income tax returns in order to prove the origin of the funds used to pay Defendants so that $100,000 could be released to the Seller, as set forth in the First Addendum to the Option to Purchase Agreement. (*Id.*)

On March 20, 2020, after repeated demands by Plaintiff, Defendants provided Plaintiff with a breakdown of how they had spent or allocated Plaintiff's $130,000 paid for due diligence costs. (*Id.*) Plaintiff asserts that this breakdown revealed that Defendants had misappropriated and misallocated the funds contributed by Plaintiff for expenses that were not properly related to due diligence (e.g., the payment of "salaries" to Defendants, an international marketing consultant, an executive consultant, and a general manager). (*Id.* at 3–4). Plaintiff alleges that he never agreed to pay such expenses. (*Id.* at 4).

That same day, Miethner emailed Plaintiff requesting that Plaintiff fund an additional $180,000 to extend the Option to Purchase another 90 days. (*Id.*) Plaintiff refused, citing concerns about the spending breakdown. (*Id.*) On March 24, 2020, Miethner emailed Plaintiff to coordinate a conference call to discuss the status of the Property. During a call on March 27, 2020, Defendants admitted there were open and unresolved due diligence items and that they did not have funds necessary to close the transaction or to extend the Option to Purchase. (*Id.*) The next day, Defendants informed Plaintiff that they had told their attorney, without Plaintiff's permission, that he could take $80,000 of the funds being held in the escrow account for attorney's fees. (*Id.* at 5). Plaintiff then declined to make further investment and soon after instructed Defendants to cancel the Option to Purchase and refund Plaintiff. (*Id.*)

When Defendants did not comply with Plaintiff's requests, Plaintiff delivered a "Notice of Termination and Escrow Refund" instructions and asked that Defendants execute and deliver the notices to the Seller. (*Id.* at 6). Thereafter, Plaintiff sent several emails and text messages to Defendants inquiring as to Defendants' receipt and status of the instructions, to which

Page 4 of 12
Case 2:20-cv-00579-JPS   Filed 03/16/21   Page 4 of 12   Document 20

Defendants did not respond. (*Id.*) Plaintiff was able to confirm that the deal had been cancelled, but he has not been able to contact Defendants. (*Id.*)

On April 2, 2020, Plaintiff's counsel in Costa Rica provided documentation demonstrating that Defendants had authorized the release of Plaintiff's $100,000 Earnest Money deposit and that there were no funds left in the escrow account. (*Id.*) Defendants had authorized the transfer of $87,371.36 to Invicta Legal Group and released $1,000 to pay for escrow account fees; the balance of the funds ($11,628.64) was released to Miethner. (Docket #1-6). Plaintiff subsequently filed suit alleging the following: (1) conversion; (2) misappropriation/civil theft; (3) breach of contract; (4) breach of implied duty of good faith and fair dealing; and (5) unjust enrichment. Defendants have moved to dismiss all claims against them.

4. **ANALYSIS**

Personal jurisdiction refers to a court's power over parties, in contrast to subject-matter jurisdiction, which is a court's power over certain types of claims. When, as here, a court exercises diversity jurisdiction over a case, it will exercise personal jurisdiction over a nonresident defendant only if a court of the state in which it sits could do so. *Purdue*, 338 F.3d at 779. This normally entails a two-part analysis, in which a court first asks whether the state's long-arm statute encompasses the defendant's conduct, and second, considers whether exercising personal jurisdiction would comport with principles of due process. *Id.*

4.1 **Wisconsin's Long-Arm Statute**

Plaintiff alleges that this Court has jurisdiction over Defendants under Wisconsin Statute sections 801.05(4) and (5). (Docket #1 at 2). To begin, in their motion to dismiss, Defendants argue that section 801.05(5) does not support personal jurisdiction over either Defendant in this case.

(Docket #10 at 7–8). Plaintiff does not respond to this argument; thus, Plaintiff waives the issue of whether section 801.05(5) supports personal jurisdiction over Defendants. *See Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995), *as amended* (Apr. 7, 1995) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action . . . . The federal courts will not invent legal arguments for litigants."). The Court will now turn to whether jurisdiction is proper under section 801.05(4).

> Section 801.05(4) permits a court to exercise personal jurisdiction:
>
> [i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant.

Wis. Stat. § 801.05(4). Defendants argue that this subsection is inapplicable for two reasons: (1) Plaintiff's claims sound in contract (not tort), and (2) Defendants did not engage in solicitation or service activities in Wisconsin. (Docket #10 at 9).

"Wisconsin courts have held that Wis. Stat. § 801.05(4) requires a tortious injury," not a contract-based injury. *Kinetic Co. v. BDO EOS Svetovanje, d.o.o.*, 361 F. Supp. 2d 878, 883 (E.D. Wis. 2005). A plaintiff may not rely on this provision if his claim does not arise under tort. *See id.* at 883–84 (holding that because a claim for unjust enrichment is "an equitable claim" in relation to a contract, the plaintiff could not rely on section 801.05(4) for personal jurisdiction).

As to his claims of breach of contract, breach of implied duty of good faith and fair dealing, and unjust enrichment, Plaintiff provides neither argument nor case law combatting Defendants' motion to dismiss them for

Page 6 of 12
Case 2:20-cv-00579-JPS   Filed 03/16/21   Page 6 of 12   Document 20

not sounding in tort. Thus, Plaintiff waives these issues, and such claims will be dismissed for lack of personal jurisdiction.

Section 801.05(4) additionally requires that a defendant must carry on—at the time of the injury—solicitation activities[1] in Wisconsin. "[S]omething more than isolated and fleeting encounters with the state of Wisconsin are necessary to come within the statutory language [of 'solicitation activities']." *Hous. Horizons, LLC v. Alexander Co.*, 606 N.W.2d 263, 266 (Wis. Ct. App. 1999). And "activities related to a single, isolated transaction are insufficient to constitute solicitation and service activities." *Id.* at 267. "[A] defendant must be 'engaged in some type of regular, ongoing or repetitive activities in Wisconsin.'" *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *3 (E.D. Wis. Dec. 10, 2009) (quoting *Hous. Horizons, LLC.*, 606 N.W.2d at 267).

In the present case, Defendants' only connection to Wisconsin was through their dealings with Plaintiff. At the time of Plaintiff's alleged injury, Defendants were not carrying on "regular, ongoing or repetitive" solicitation in Wisconsin. They did not work in Wisconsin, had never travelled to Wisconsin, did not advertise or promote services in Wisconsin, did not regularly solicit business or investments from Wisconsin, and did not regularly engage with Wisconsin residents in real estate investments. Their entire connection to Wisconsin was through Plaintiff via the transaction leading to this suit.

Plaintiff argues that, because Defendants sought additional investments in the pursuit of acquiring the Property (which Plaintiff

---

[1] While § 801.05(4) confers jurisdiction over defendants if they participate in solicitation or service activities, Plaintiff does not assert that Defendants engaged in service activities.

Page 7 of 12
Case 2:20-cv-00579-JPS   Filed 03/16/21   Page 7 of 12   Document 20

refused), Defendants were engaged in activity outside of the transaction leading to the suit, and "the fact that [Plaintiff] declined to make additional investments . . . cannot benefit Defendants[]." (Docket #13 at 10). This argument is unconvincing. The additional investments which Defendants sought were related to the transaction upon which this suit is premised— making them connected to the transaction. Plaintiff also alleges that Defendants, through Salazar, engaged in additional solicitation when Salazar discussed a separate investment opportunity on behalf of Jacobs's wife when he spoke on the phone with Plaintiff. While this communication may be separate from the transaction underlying the suit, it does not constitute "regular, ongoing or repetitive" solicitation. *See Maplewood Grove, LLC v. Johnson-Dulaney Builders, Inc.*, No. 08-C-0791, 2009 WL 10676357, at *4 (E.D. Wis. Jan. 16, 2009) ("To engage in 'solicitation or service activities,' a defendant must engage in activities 'beyond isolated and fleeting contacts . . . . The term requires the defendant (or its representative) be engaged in some type of regular, ongoing or repetitive activities in Wisconsin.'" (quoting *Hous. Horizons, LLC.*, 606 N.W.2d at 267)). Thus, this Court cannot maintain personal jurisdiction over any of Plaintiff's claims under section 801.05(4).

### 4.2 Due Process

Even if Plaintiff's claims were covered by section 801.05(4), personal jurisdiction over Defendants would not comport with due process. The Due Process Clause of the Fourteenth Amendment protects a defendant from being haled into court in a state where he has no meaningful connections. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). Due process requires that, for personal jurisdiction to exist over a nonconsenting, out-of-state defendant, the defendant must have "certain minimum contacts

with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction that can satisfy the strictures of due process: general and specific. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 (1984). General personal jurisdiction requires that the defendant have "affiliations with the State [that] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Plaintiff does not contend that general personal jurisdiction exists. (Docket #13 at 11).

Specific personal jurisdiction, by contrast, exists where the suit before the court arises from or relates to the defendant's contacts with the forum state. *Helicopteros*, 466 U.S. at 414; *Int'l Shoe*, 326 U.S. at 317–18. This type of personal jurisdiction is more limited than general personal jurisdiction. *See Daimler*, 571 U.S. at 127. Specific personal jurisdiction arises only where the defendant's contacts with the forum state "directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In assessing the existence of specific personal jurisdiction, the court must examine the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

For specific personal jurisdiction to exist, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Burger King Corp.*, 471 U.S. at 474–75. The defendant must have sufficient contacts with the forum, related to the suit at bar, such that he "should reasonably anticipate being haled into court [in the forum State]" on that suit. *Burger King Corp.*, 471 U.S. at 474. Importantly, a court "looks to the defendant's contacts with the *forum State itself,* not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (quoting *Burger King Corp.*, 471 U.S. at 475). Specific personal jurisdiction is present only when "the defendant's suit-related conduct [creates] a *substantial* connection with the forum State." *Walden*, 571 U.S. at 284. To determine the affiliation with the forum in a contract dispute, courts examine "prior negotiations, contemplated future consequences, the terms of the contract, and the

parties' course of actual dealing." *Johnson v. Hartwell*, 690 F. App'x 412, 413 (7th Cir. 2017).

Here, the Investment Agreement—a one-page contract not involving continuing obligations—contemplated an investment by Plaintiff in a Costa-Rican property. The parties negotiated and executed the Investment Agreement remotely, while Plaintiff was in Wisconsin, but nothing about Wisconsin bore on the transaction. That Plaintiff's payments to the nonresidents were drawn from a Wisconsin bank does not mean Defendants purposefully availed themselves of the privilege of conducting business within Wisconsin. *See Purdue*, 338 F.3d at 781 (citing *Burger King Corp.*, 471 U.S. at 478) ("contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *Forret v. Davis*, No. 17-CV-1440-JPS, 2017 WL 6501918, at *5 (E.D. Wis. Dec. 19, 2017) (finding that nothing about Wisconsin bore on the contracts at issue where they made no mention of Wisconsin, they did not rely on Wisconsin law, and the parties communicated by phone); *N. Grain Mktg., LLC*, 743 F.3d at 489 (finding that the checks paid by the plaintiff to the defendant drawn from an Illinois bank did not show the defendant purposefully availed himself of conducting business in Illinois).

Plaintiff could have been a resident of any state, and those jurisdictions would have had the same connection to this action as Wisconsin. Plaintiff is the only link between Defendants and Wisconsin—a link insufficient to confer specific personal jurisdiction. *See Walden*, 571 U.S. at 285; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter Walden there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum."). Burow's presence in Wisconsin during phone calls and email

Page 11 of 12
Case 2:20-cv-00579-JPS   Filed 03/16/21   Page 11 of 12   Document 20

correspondence is incidental and "nothing more than fortuitous." *Forret*, 2017 WL 6501918, at *5. Accordingly, this Court cannot maintain personal jurisdiction over Defendants without running afoul of due process.

5.  **CONCLUSION**

Defendants' conduct does not qualify under Wisconsin's long-arm statute to allow this Court to maintain personal jurisdiction over them. Additionally, Defendants lack sufficient contacts with Wisconsin for personal jurisdiction to comport with due process. The Court need not address Defendants' argument to dismiss Plaintiff's conversion claim for failure to state a claim. The Court must grant Defendants' motion to dismiss for lack of personal jurisdiction, and this action will be dismissed without prejudice.

Accordingly,

**IT IS ORDERED** that Defendants Erik Miethner and Richard Jacobs's motion to dismiss (Docket #7) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge